Filed 4/30/14  P. v. King CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060394 |
| v. | (Super.Ct.No. FVA1300615) |
| QUINCY DUBOIS KING, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I

## STATEMENT OF THE CASE

On November 13, 2013, a first amended information charged defendant and appellant Quincy Dubois King and co-defendant Edward George Robinson with: (1) second degree robbery under Penal Code[1] section 211 (counts 1, 4); (2) unlawful imprisonment by force under section 236 (counts 2, 5, 8); (3) assault with a firearm under section 245, subdivision (a)(2) (counts 3, 6, 7, 9); and second degree burglary under section 459 (count 10). The information also alleged that the principal was armed with a firearm under section 12022, subdivision (a)(1) as to all counts. A third defendant, Javon Lee Wright, pled guilty prior to the filing of the amended information.

On the same date, after the commencement of jury selection, defendant pled no contest to counts 1 and 4, the second degree robbery charges, and admitted that he had served one prior prison term, in exchange for an agreed-upon prison sentence of seven years.

On December 13, 2013, the court conducted a hearing under *People v. Marsden* (1970) 2 Cal.3d 118. As part of the hearing, defendant advised the court that he wanted to withdraw his no contest plea and admission. The court denied the *Marsden* request and defendant's motion to withdraw the no contest plea and admission. The court then imposed the agreed-upon prison term of seven years consisting of the upper term of five

---

[1] All statutory references are to the Penal Code unless otherwise specified.

years for count 1, a consecutive term of one year for count 4, and a consecutive one year for the prior prison term allegation.

On December 21, 2013, defendant filed a timely notice of appeal. On January 2, 2014, the trial court granted defendant's certificate of probable cause.

## II

## STATEMENT OF FACTS[2]

At about 11:30 a.m., on April 8, 2013, defendant and co-defendants Wright and Robinson walked into a Payless Shoe Store in Rialto. Wright approached an employee, Jane Doe 1, and pointed a small silver gun at her head and ordered her to surrender her iPod and cell phone. Wright put these items in his pants pocket, grabbed Doe 1, dragged her to the cash register, and ordered her to open it. Defendant took Jane Doe 2, another Payless employee, to the back of the store. When Doe 1 was unable to comply because she was too upset, Wright grabbed Doe 2 and had her open the register. Wright took cash from the register. He then wrapped Doe 1's hands and ankles with duct tape.

All three men went through the purses of Doe 1 and Doe 2. Wright then dragged Doe 2 back to the front of the store at gunpoint and ordered her to open the safe. Doe 2 informed Wright that the safe was on a ten-minute delay.

During this incident, two female customers walked into the store. Wright pointed his gun at the women and ordered them to remain in a corner. One complied and the other ran out of the store, screaming.

---

**2** Since defendant pled no contest prior to trial, the statement of facts is taken from the transcript of the preliminary hearing.

3

In response to a silent robbery activation alarm, police were dispatched to the store. Officer Austin Dossey saw three black males running from the store. The men ignored the officer's order to stop. The officer chased one of the men, later identified as Wright, and detained him in front of a nearby Stater Brothers grocery store.

After Officer Dossey detained Wright, he detained Robinson outside the rear of Aldo's Mexican Restaurant, about 100 feet from Stater Brothers. Officer Dossey had been alerted to Robinson's presence by a police helicopter pilot. The jeans that Robinson was wearing, with red and white stitching on the pockets, matched the jeans worn by one of the three men he saw running from the scene. Defendant was wearing a gray and teal hat that matched a hat worn by one of the perpetrators on a store surveillance video.

As Officer Dossey chased Wright, Officer McDonaugh chased defendant and tackled him in a field to the rear of a nearby apartment complex.

After his arrest, Wright informed Officer Dossey that he met up with defendant and another man about a mile from the Payless and planned on how to get money from that store. Wright admitted that he pointed a gun at both Doe 1 and Doe 2, ordering each to open the cash register.

### III

### ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of

4

the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. On March 19, 2014, defendant filed an 11-page handwritten brief (first brief). In this brief, defendant essentially argues that his counsel rendered ineffective assistance of counsel (IAC). On March 25, 2014, defendant filed a five-page handwritten brief (second brief). In the second brief, defendant argues that he is entitled to additional custody credits under section 4019. On April 8, 2014, defendant filed a one-page supplemental brief (third brief). In the third brief, defendant requests that his appellate counsel be relieved.

First, we address defendant's IAC claim. In order to establish a claim of IAC, defendant must demonstrate, "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 430.) Hence, an IAC claim has two components: deficient performance and prejudice. (*Strickland v. Washington*, *supra*, at pp. 687-688, 693-694; *People v. Williams* (1997) 16 Cal.4th 153, 214-215; *People v.*

5

*Davis* (1995) 10 Cal.4th 463, 503; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.) If defendant fails to establish either component, his claim fails.

When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

In this case, defendant contends that both counsel who represented defendant rendered IAC because neither (1) sought discovery of documents, and (2) challenged the identification of defendant. Both of these issues were discussed at the *Marsden* hearings for both counsel.

The record, however, indicates that both counsel received discovery and had evidence to proceed with representing defendant.

At the first *Marsden* hearing on June 28, 2013, defendant told the court, "Now, since the beginning of my court days - - my first court date, I've been asking for a Brady motion so I could have my motion to discovery so I could see what they have against me. I haven't been presented with any of that and . . . ." In response, the court noted: "In terms of discovery, you aren't entitled to it once you're appointed counsel through the courts. It's optional with [counsel] whether or not he wants to present you with the discovery. That's his choice."

Defendant then went on to state that he wanted counsel to file a motion "to present all physical evidence. How could I go to trial without my motions of discovery or anything like that?" He went on to state," I want to know what's the evidence like. They

say this guy said my name, and I want to see - - I want to hear the recording. I want to see the videotape. I haven't been able to see any of that, you know? I don't want to keep proceeding because I haven't seen the evidence. I need to have the evidence against me, like - - you know?"

To this, the court responded: "Well, Mr. King, you were present during the conducting of the preliminary hearing, so I know that you did have an opportunity to listen to the evidence that's against you. So you do have, obviously, an understanding of what that evidence is, and - -"

When the trial court gave an opportunity for first counsel to respond, he stated that he had his private investigator meet with defendant. At that time, "[s]he reviewed the evidence by going over the police reports with [defendant] and wrote a report of her meeting with him. [¶] [Defendant] did ask for a motion - - that I file a motion to, um, suppress in which I asked him what specifically was he talking about, and he indicated all the evidence. And I've indicated to him that based upon my review of the discovery and of the preliminary hearing transcript, the evidence that was taken was incident to arrest. I did not see any search or seizure issues."

At the second hearing held on December 13, 2013, the evidence again showed that there was ample discovery conducted in this case. Second defense counsel confirmed that defendant had an opportunity to view the videotape of the robbery at Payless and that she was not in "cahoots" with the prosecution.

As to the lineup issue, first counsel promised to look into it further. The record shows that in the Rialto Police Infield Showup Form, one of the victims stated: "I recognize him because he was standing right in front of me."

Based on the record, there is nothing to indicate that defendant's counsels' performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms. In fact, the evidence shows that both counsel worked diligently to obtain discovery and keep defendant informed about his case. Defendant's IAC claim fails.

Next, we address defendant's second brief wherein he argues that he is entitled to additional custody credits under section 4019. Defendant states that he spent 254 total days in custody. The trial court awarded 254 actual and 38 conduct credits under section 2933.1 for a total of 292 days of credit. Defendant contends that he is entitled to "double of 254 days making it a total of 508 days" under section 4019. Defendant's argument fails because under section 2933.1, subdivision (c), "[n]otwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." A person specified in subdivision (a) of section 2933.1 is "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5[.]" Under section 667.5, subdivision (c), a violent felony includes "(9) Any robbery." In this case, defendant pled guilty to two counts of second degree robbery. He, therefore, was limited to 15 percent of the

8

actual period of confinement; 15 percent of 254 is 38.1. Here, the court properly awarded defendant an additional 38 days of credit. There was no error.

Finally, we address defendant's third brief wherein he requests that his appellate counsel be relieved. Other than asking that his current attorney of record be relieved, defendant provides no facts or further information to support the request. The motion is therefore denied. (*People v. Marsden*, *supra*, 2 Cal.3d 118.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:


MILLER
J.


CODRINGTON
J.

9